Appeal Affirmed and Opinion Filed November 28, 2012.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-11-01088-CR

## COREY DEWAYNE GLADNEY, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 3
Dallas County, Texas
Trial Court Cause No. F10-59543-J

# MEMORANDUM OPINION

Before Justices Moseley, Fillmore, and Myers
Opinion By Justice Moseley

A jury found appellant Corey Dewayne Gladney guilty of murdering Aaron Alexander and assessed punishment at forty-five years' imprisonment. Gladney appeals. In his first issue, he argues the trial court erred by allowing a witness to testify about an anonymous phone tip she received. In his second and third issues he argues the trial court erred by refusing to allow him to cross-examine the mother of the victim regarding the victim's criminal history at the guilt/innocence phase and at the punishment phase of the trial. The background of the case and the evidence adduced at trial are well known to the parties; thus, we do not recite them here in detail. Because all dispositive issues are clearly settled in law, we issue this memorandum

opinion pursuant to Texas Rule of Appellate Procedure 47.1. We affirm the trial court's judgment.

## Background

There is evidence in the record that Alexander was sitting in his vehicle in the crowded parking lot of a shopping center when Gladney approached his vehicle and fired a handgun into it. Alexander attempted to drive his vehicle to safety but crashed into another car in the parking lot. Alexander then attempted to escape on foot but was shot several more times by Gladney in front of many witnesses.

Gladney fled the scene in the vehicle of Sylvester Spicer. The State presented evidence from Detective Mary Brady who, over Gladney's objection, testified that she had received an anonymous phone call claiming that Spicer had disposed of the handgun used in the murder while he was selling his vehicle in Houston.

## Hearsay

In his first issue, Gladney argues that the trial court erred by admitting Brady's hearsay testimony concerning the contents of the anonymous phone call.

Assuming without deciding that the trial court erred by admitting Brady's testimony about the anonymous caller's statements, such an error would be non-constitutional error; thus, we must disregard it unless it affected an appellant's "substantial rights." TEX. R. APP. P. 44.2(b); see, e.g., Dorado v. State, 843 S.W.2d 37, 38 (Tex. Crim. App. 1992) (requiring a non-constitutional harm analysis for hearsay statements incorrectly admitted as exceptions under article 38.072). An error affects a substantial right "when the error had a substantial and injurious effect or influence in determining the jury's verdict." King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Thus, we affirm a criminal conviction despite non-constitutional error if, after examining the record as a whole, we are left with the fair assurance that the error

did not influence the jury or influenced the jury only slightly. *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001) (citing *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000) and *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)); *see also O'Neal v. McAninch*, 513 U.S. 432, 438 (1995) (error must be treated as harmful if "grave doubt" exists as to whether it had a "substantial and injurious effect or influence" upon the jury). We analyze the whole record to determine if the trial court's error had no effect or only a slight effect on the jury's decision. *Schutz*, 63 S.W.3d at 444. Our analysis goes beyond the fact that the jury's credibility determinations had an impact on its verdict. *Id.* at 445. We consider all the evidence, the nature of the evidence supporting the verdict, and the character of the error and its relationship to other evidence to determine if the error substantially affected an appellant's rights. *Morales*, 32 S.W.3d at 867.

In the present case, the evidence at issue concerned the location and possible means of disposal of the handgun allegedly used to kill Alexander. Certainly, being unable to produce the alleged murder weapon may create some doubt in the mind of the jury, and offering an explanation for its inability to present the weapon at trial may have helped the State assuage that doubt. Here, however, the other evidence showing Gladney's guilt is overwhelming and renders the State's inability to produce the murder weapon trivial. Three separate witnesses identified Gladney as the shooter. The testimony of one of these eye-witnesses was corroborated by a video he was recording prior to and during the shooting. That same witness also identified Gladney as the shooter from a surveillance tape recorded by a business located adjacent to the crime scene.

Given the relative insignificance of the evidence about the anonymous phone call in comparison to the weight of the properly admitted evidence that Gladney was the shooter, we conclude that the complained-of hearsay evidence had no effect or only a slight effect on the

jury's decision. Because appellant's substantial rights were not affected by any error the trial court may have made by admitting Brady's testimony about the anonymous phone call, we overrule appellant's first issue. *See* TEX. R. APP. P. 44.2.

## Cross-Examination

In his second and third points of error, Gladney argues the trial court erred by not allowing him to cross-examine Alexander's mother, Antwonette Alexander Charles, regarding Alexander's criminal history during the guilt/innocence and punishment phases of the trial.

The State called Charles at the guilt/innocence phase of the trial. During cross-examination, Gladney's counsel asked three questions regarding Charles's knowledge of the shopping center where the shooting occurred and then asked to approach the bench. After an off-the-record discussion, Gladney's counsel passed the witness.

Following a finding of guilt, Charles was again called during the punishment phase of the trial. After the State passed the witness, Gladney's counsel again approached the bench for an off-the-record conversation. Following this conversation he passed the witness.

At the end of the punishment phase of the trial, Gladney made an offer of proof out of the jury's presence. His counsel put on the record that he had approached the bench and requested that he be allowed to cross-examine the victim's mother regarding a number of issues, including: whether or not Alexander had drug money in his pockets at the time of the shooting, whether Alexander was associating with other people who were drug dealers and might potentially have been suspects, whether Alexander was a "convicted felon that was a drug dealer," and whether or not Alexander was dealing drugs at the time of the murder. The stated purpose of this offer was to preserve a Sixth Amendment claim at the guilt/innocence phase of the trial and to prevent the State from presenting a false impression of the victim's character at the punishment phase.

-4-

Regarding his second issue—his complaint about limited cross-examination during guilt/innocence—Gladney has preserved nothing for our review. The Texas Rules of Appellate Procedure require that in order to preserve error, an offer of proof must be made before the reading of the jury charge. TEX. R. APP. P. 33.1(a). Gladney did not make the offer of proof until the end of the punishment phase of the trial, well after the jury charge was read for the guilt/innocence phase. Because Gladney's offer of proof was not made in a timely fashion, he has preserved nothing for our review. *See id.* As such, we overrule Gladney's second issue.

In his third issue, Gladney argues the trial court erred by refusing to allow him to cross-examine Charles regarding Alexander's criminal history during the punishment phase of the trial. He argues that when Alexander's mother testified that he had a good heart and was beloved by his family she "opened the door" for Gladney to present evidence that he was not law abiding.

The trial court has great latitude "to impose reasonable limits on cross-examination based upon concerns about, among other things, harassment, prejudice, confusion of issues, and the witness's safety." *Virts v. State*, 739 S.W.2d 25, 28 (Tex. Crim. App. 1987). We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1991) (op. on reh'g). As long as the trial court's ruling was at least within the zone of reasonable disagreement, the appellate court will not intercede. *Id.* at 391; *see Mitchell v. State*, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996) (noting standard of review on admissibility of evidence at punishment phase is abuse of discretion).

In a non-capital felony trial, evidence is admissible during the punishment phase if the court deems it relevant to sentencing. *Hayden v. State*, 296 S.W.3d 549, 552 (Tex. Crim. App. 2009). Evidence is relevant during the punishment phase if it will help the factfinder decide the appropriate sentence for a particular defendant given the facts of the case. *See id.; Rogers v.*

*State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999). Victim character evidence is admissible during the punishment phase if the factfinder "may rationally attribute the evidence to the accused's personal responsibility and moral culpability." *Hayden*, 296 S.W.3d at 552 (internal quotation marks omitted). However, evidence that is useful only to draw a comparison between the victim and other members of society based on the victim's worth "should usually be excluded under rule 403." *Id.*; *Mosley v. State*, 983 S.W.2d 249, 262 (Tex. Crim. App. 1998). Evidence that Alexander was a drug dealer would therefore be irrelevant and inadmissible if offered to show that his life was less valuable than other members of society.

However, evidence that is otherwise inadmissible may become admissible when a party opens the door to such evidence. *See Renteria v. State*, 206 S.W.3d 689, 697–98 (Tex. Crim. App. 2006); *Griffin v. State*, 787 S.W.2d 63, 67 (Tex. Crim. App. 1990). A party opens the door by leaving a false impression with the jury that invites the other side to respond. *Daggett v. State*, 187 S.W.3d 444, 452 (Tex. Crim. App. 2005). But even if a party opens the door to rebuttal evidence, the trial judge still has the discretion to exclude the evidence under Rule 403. *See Wheeler v. State*, 67 S.W.3d 879, 886 (Tex. Crim. App. 2002); *Martinez v. State*, 17 S.W.3d 677, 687 (Tex. Crim. App. 2000). Courts generally prohibit a party from using extrinsic evidence to impeach a witness on a collateral issue. *Daggett*, 187 S.W.3d at 454 n.24. An issue is collateral if, beyond its impeachment value, a party would not "be entitled to prove it as a part of his case tending to establish his plea." *Bates v. State*, 587 S.W.2d 121, 141–42 (Tex. Crim. App. 1979) (opinion on reh'g) (internal quotations omitted). Unless the witness's testimony created a false impression that is "directly relevant to the offense charged," allowing a party to delve into the issue beyond the limits of cross-examination wastes time and confuses the issues. *Hayden*, 296 S.W.3d at 554; *Daggett*, 187 S.W.3d at 454 n.24; *Bates*, 587 S.W.2d at 142.

Here, the trial court was well within its discretion to limit cross-examination of Charles. Alexander's status as a drug dealer was a collateral issue; it was not relevant to the jury's assessment of the appropriate sentence to impose on Gladney. Likewise, Alexander's status was not directly relevant to the charged crime, murder. Inasmuch as it was relevant, it would only be relevant for the impermissible purpose of comparing the victim's worth to that of other members of society. Allowing Gladney to impeach the victim's character with extrinsic evidence would waste time and confuse the issue by focusing the jury's attention on the victim's character rather than the defendant's personal responsibility and moral culpability. Thus, it was within the trial judge's discretion to exclude the evidence under Rule 403. *See Hayden*, 296 S.W.3d at 554–55. Therefore, we overrule Gladney's third issue.

Based on our disposition of Gladney's three issues, we affirm the judgment of the trial court.

JIM MOSELEY
JUSTICE

Do Not Publish
Tex. R. App. P. 47
111088F.U05

—7—



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

No. 05-11-01088-CR

GLADNEY, COREY DEWAYNE,
Appellant

V.

THE STATE OF TEXAS, Appellee

Appeal from the Criminal District Court
No. 3 of Dallas County, Texas (Trial Court
No. F10-59543-J).
Opinion delivered by Justices Moseley,
Fillmore, and Myers.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED.**

Judgment entered November 28, 2012.

_____
JIM MOSELEY
JUSTICE